Good morning, Your Honors. May it please the Court, Philip Smith on behalf of the Petitioner, Mr. Jorge Luna-Trujillo. Your Honor, this is an immigration case that involves the agency's reinstatement of an expedited removal order where Petitioner had a pending adjustment of status application filed based on his father's petition that had been approved in 1991, where the agency actually used the attorney to trick Petitioner into coming into a fingerprint appointment where he was then arrested. His attorney then was not permitted to represent Petitioner during the reinstatement process. Were you the attorney? I was not, Your Honor. It was another attorney in my firm, Your Honor. And Petitioner is challenging, one, the underlying expedited removal order, two, the applicability of this reinstatement provision to his case. How are you challenging, number one, the underlying expedited removal order? It was not valid when it was entered. Well, it has been raised in this Court. However, the Areola-Areola case from this Court has recently come out, which has instructed that the validity of the underlying removal order can be challenged. However, in that case, the Court held that the challenge had to be in district court in habeas proceedings. And so there, the Court transferred the case to district court to question the validity of the underlying removal order. Now, there is a question here that was not presented in Areola. And that is, here, Petitioner is challenging both the underlying expedited removal order and the reinstatement process. And on what ground do you attack the underlying extradition order? It wasn't applicable to the Petitioner because an expedited removal order can only be, by statute, entered where the individual either has no papers, no valid papers, or the individual is, has fraudulent documentation. So you're claiming it's a due process violation? It violates, it, well, because he's at the point of entry. It's because it violates the statute, the underlying expedited removal order. And in habeas proceedings, in this Court, an individual can raise both statutory and constitutional questions in habeas proceedings. There's, then, his argument, so this Court could transfer it to the district court. However, he also is claiming that the reinstatement provision does not apply to him, because the reinstatement requires, the provision requires an illegal reentry after a removal. And here we have an entry, but not a reentry, as that term is defined by the courts. Secondly, there was a due process violation in the reinstatement process itself, because he was denied his right to counsel during the reinstatement process. What's the prejudice is, one, counsel could have explained that the reinstatement provision does not apply, because the underlying removal order was not valid. Two, there's an I-2-12, he had a pending adjustment of status application. Counsel could have submitted an I-2-12 application, which is permission to reapply after a previous removal. And under the Perez-Gonzalez case, which is a recent case, this Court has held that a, the reinstatement provision can only be applied after the adjudication of the adjustment of status application in the I-2-12. And so counsel would have had an opportunity to present that, and that would be the prejudice. Mr. Smith, tell me how the record demonstrates the, as you described it initially, I think you said that the agency trapped your client by facilitating the, facilitating access, not access, but utilizing your partner's services, except that... Our firm, yes. Your firm? They sent the fingerprint appointment. How do we know this in the record? I mean, I see the recital in your brief. Petitioner's attorney arrived shortly after Petitioner. His attorney was forced to wait in the hallway. I'm not discrediting it, but I don't know quite how we know this and what the circumstances are in the brief. Well, it is a problem, because in the summary, it's a summary process with no right to a to have an administrative record to review. Your partner has filed an affidavit somewhere, or something of that sort? My partner, no, she has not. She did not file an affidavit, Your Honor. Her letter explaining the situation is in the administrative record. There is... Is that Ms. Nelson who's name is on your brief? Yes, Your Honor. There is in the record the certified receipt that was sent after the reinstatement process. They sent the reinstatement order to our office, and so our address is there. It seemed that they knew that they had an attorney, that we were... She was... The individual was represented. Why was your client ordered removed on March 7, 1999? It was determined at that point in time that he... Well, he had a valid passport. He had a valid border crossing card. He was stopped at the airport. A valid passport? A Mexican passport, and a visa border crossing card in the passport. He flew into the Phoenix airport. It was, what I think, and what's in the record, is the passport had been issued by the Mexican consulate here in Portland. He only had a one-way ticket, and that's what led to a discussion. It was determined incorrectly that he was subject to the reinstatement provision, but his documents were valid. Why was he removed on March 7, 1999? Because the statement in the record is that he did not have a valid passport, border crossing card, or visa. But then it goes on to say he had a valid passport and border crossing card. So what happened when he was ordered removed? He was flown back to Mexico. And how did he get back in the United States? He then entered the country without inspection. So he snuck across the border. That is correct. However, if I may, in terms of this, the statute requires a reentry, and that's what Congress required. And Congress could have easily used the word entered, and they said reentry. And it is very clear that at the point that he was applying at the Phoenix airport, he was applying for entry. He hadn't made an entry. So he's in Phoenix, gets sent back, and he sneaks across. That's correct. And that's not an entry. That is correct. Well, the second one is an entry, yes, but it's not a reentry. Even though he was in Phoenix. That's correct. Because if he entered in Phoenix, then he has a due process violation. He has due process rights if the agency is going to say that's an entry. Because under the case law, once a person has entered the country, they have the full range of constitutional due process rights. Why don't we hear from the government and give them a chance to respond. Thank you. May it please the court, my name is Jennifer Lightbody, and I represent the respondent. The issue before this court is whether the immigration officer properly reinstated a prior order of removal. And the answer is yes, he did properly reinstate a prior order of expedited removal. Did the immigration judge exclude an attorney from the hearing, knowing that the attorney was there? There was no hearing before an immigration judge, Your Honor. This was an expedited order of removal, so he was before an immigration officer. An immigration officer. And no, the attorney wasn't present because it's a reinstatement of a prior order. And so he's not entitled to a hearing. I'm not asking at the moment the legal question. I'm trying to understand the narrative. Mr. Smith has recited that, as I understand it, to the knowledge of the officer, the alien attorney was present in the hallway or something of that sort, but was not admitted to wherever the officer was, and Mr. Luna Trujillo was not given access to his attorney. Is that a correct statement? Yes, it is, Your Honor. And is that an agency policy, or how does that happen? It happens because it's a reinstatement of a prior order of removal. He's not entitled to any kind of hearing, and he's not entitled to have counsel present during that time. This is a reinstatement of something that was previously ordered, and he had an opportunity to challenge that underlying order. He can't do it here, but he had an opportunity to challenge that, and that was in Habeas, and he didn't challenge that in Habeas. In Habeas jurisdiction, in an expedited removal proceeding, it's very limited. And he can still do that? Well, no. We're now at the point of a reinstatement. He didn't challenge the underlying order in Habeas. I'm inquiring now whether that access is still available to him. Well, in this court's decision in Areola, they transferred it based on a constitutional claim, and the government would submit that there is no constitutional claim here because the petitioner can't show any prejudice. In other words, he can't show that his status would change because he was inadmissible. He was knocking at the door asking to be let in, and he was turned away. He was told no. So any challenge that he makes, I'm sorry, any challenge that he attempts to make, there's no prejudice. There's no change in the outcome of the proceedings because he was never admitted into the country, and he has no constitutional right to be. You're saying that this court, the Court of Appeals, should make a determination that the Habeas corpus court would be without jurisdiction? I'm saying that the court shouldn't transfer it. I mean, obviously, you can't stop him from going into Habeas, but this court shouldn't transfer the case under Areola because this case is controlled by Padilla. So you can't stop him from raising his challenges in Habeas, but certainly this court shouldn't transfer it because he doesn't have a colorable constitutional claim. He can't show prejudice. Would the government argue in the Habeas court that the decision not to transfer from this court to the Habeas court was preclusive of the Habeas court's jurisdiction? I think that the government, without knowing what the petitioner would be raising, I think the government's position would be that, again, he can't show prejudice. He can't show a colorable constitutional claim. There's no prejudice. He was inadmissible, and nothing changes that status. And with respect to, first of all, the petitioner argues, first of all, that the order of removal was not lawful. Under the regulation, which is 8 CFR 241.8, the immigration officer is simply required to determine whether there was a prior order of removal, and that was done. And that's supported by the record. Secondly, the petitioner argues that there wasn't a re-entry. There was only an entry. And the government would submit that in order to, well, there are two reasons why the court shouldn't accept that. Number one, if you look at the regulation, which is 8 CFR 241.8, it says an alien who illegally re-enters the U.S. after having been removed, while under an order of exclusion, deportation, or removal, shall be removed by reinstating a prior order of removal. He's saying that there was no entry because he was turned away initially. Well, in an exclusion proceeding, there isn't technically an entry into the United States. So under the regulation, he's asking you to read out the word exclusion from the regulation. And I would also submit that in Padilla, this court, the facts are so similar to Padilla as in this case, where the court specifically that that alien in that case was also found inadmissible, turned away, then swam across the Rio Grande and re-entered the country. And this court used the term re-entry when that alien was deemed inadmissible initially. And again, in Perez-Gonzalez, another case that's cited by the petitioner, again, when they're talking about Padilla, they were talking about a re-entry. So what the petitioner is actually asking this court to do is read out reinstating an order of expedited removal. And the statute doesn't limit it to just doesn't exclude expedited orders of removal. And even if the court doesn't... No, I'm sorry. Go ahead. Even if the court doesn't accept that, the petitioner by his own admission has previously entered the country. In the transcript at page 11 and 13, he was asked by the immigration officer and he was told that his statements could be used against him in further proceedings. And he admitted that in 1996 and in 1998, he had unlawfully entered this country. And so for the petitioner to stand up and say that he's never re-entered the country is simply a fiction. This court can consider that. And the fact that he has previously illegally entered the country and he re-entered, and his order of reinstatement was lawful. Well, when you say it's a fiction, he just uses the words that we all use in this area that are fictions, right? The idea that a person is physically present in the United States and has never entered it is something of a fiction. Correct. And so all he is doing is he is taking the lingo of the law and saying, here it is. We use these fictions in describing all of these situations. And he's saying, we're going to take the government at its word. And being present in Phoenix doesn't ever mean that we've entered the United States. And he's saying now re-entry means re-entering. And so he's just elaborating on the fictions that are built right into this whole body of law. Isn't that true? Well, it's not exactly true, Your Honor, because under the regulation, it specifically refers to orders of exclusion, deportation, or removal. And so in order to ascribe to his position, the court would have to read out the word exclusion from the regulation. In addition, previously, in 1996 and 1998, he admitted under oath to an immigration officer that he had previously entered the country illegally. And so it is a re-entry. And what he's asking this court to do is contort the law to fit his specific situation, that the court should only look at his prior order of expedited removal and the reinstatement and not look at anything else, not look at the regulation, not look at his previous immigration history. And I would submit that the court should not do that, that the regulation says exclusion. It means exclusion. It doesn't mean that he had to legally enter the country. The court should be focusing on the phrase after having been removed. And he was removed from the country, but he successfully entered the country, and then he re-entered the country the same day that he was ordered under an expedited order of removal. Ms. Lightbody, this case does differ from Padilla, does it not? I know you rely on Padilla, but doesn't it differ from Padilla in the sense that in Padilla, according to this court's ruling, there was no prior order of removal, and here there is. Isn't that right? Well, he's challenging it now. The only thing that he can challenge was, is there a prior order of removal? And there was. And that's found at the administrative record, page 15. But I understand that the Petitioner in this case is not saying that there was not a removal order, but he challenges the validity of that order. Right. And that's a difference from the Padilla scenario, is it not? It is. And I would submit to the court, though, that there's no jurisdiction for the court to consider the underlying order of removal, the expedited order of removal. And that's clear in Areola that the court said that there is no jurisdiction to review that. And that there is a difference between Padilla and this case. And he also submits that he didn't actually reenter the country, which Padilla didn't challenge. But in all other aspects, Padilla is controlling in this case. In Perez-Gonzalez, he also says that that case applies here. And, again, I would submit that it's Padilla that applies. He is not eligible to apply for, or rather, he's not eligible for the relief that he sought in this case. In Perez-Gonzalez, they specifically said that this, that Padilla was different because the Petitioner had applied, in Padilla, the Petitioner had not applied for a 212 waiver. And that's exactly what happened in this case. He didn't apply for a 212 waiver before the order of reinstatement was issued. He applied for the 212 waiver on March 5th, 2003. And then he, and that was after the court, or after the asylum, after the immigration officer had already reinstated the order of removal. One other question, if I may. It was like going back to something I inquired about before, but I'm not sure that I understand the government's answer completely. It appears from the colloquies that Ms. Nelson was there at the, outside wherever the immigration officer was at the time of the reinstatement order, and that this was known to the reinstatement officer, and you directed us to the regulation saying what the reinstatement officer is to do. I take it it's no part of the regulation that the officer is directed not to permit an alien to have attorneys with him. But is there any, is there anything in that regulation or other that establishes that as the government's policy? I, not in the regulation, Your Honor, but I believe that in either Padilla, Areola, or Perez-Gonzalez, and I'm sorry I can't narrow it down more, that there was a discussion about the fact that the alien isn't entitled to a hearing and isn't necessarily entitled to counsel. Because this is a reinstatement of a prior order of removal, an order that he didn't previously challenge. Maybe I put the question badly. I wasn't asking with respect to whether there is a, quote, stated in regulation or otherwise that a person who has an attorney and that that's known to the government and that the attorney is there is not permitted either to consult with the attorney or to bring the attorney before the officer who is to make the decision. And I'm sorry I'm not able to answer that question. I'm not sure what the Department of Homeland Security's policy is with respect to permitting attorneys to be present during a reinstatement. But, again, it's not a hearing. And so... I understand that. I think Judge Levy has a question. Let's assume for our purposes here that we agree with you on this issue of reentry and entry and so on. And then let's assume that the court sees this or the judges of this court see this as embodying a petition for habeas. What choices do we have? We can ignore it. We can decide it. File it in the district court. File the records in the district court and decide it. Or we can transfer it to the district court. Can we not? Well, I would submit that you can't transfer it because there isn't a colorable constitutional claim to transfer. Does there have to be a colorable constitutional right in order for a person to get habeas? What if a person says I'm being held in violation of the statutes of the United States of America? That won't get him habeas? Well, that, of course, aren't the facts in this particular case. No one is stopping him from seeking habeas relief, but it's a question of transfer. We have before us certain issues. The court has previously treated the issue of an attack on the summary exclusion as grounds to treat it as habeas. You're saying we can't do it because it doesn't rise to a constitutional level? In Areola, it was a question of whether it rose to a constitutional level because he, in that particular case, the alien, his attorney didn't seek an appeal to the board and then ultimately didn't seek review to this court, and there was a claim of ineffective assistance of counsel, and the argument was... But you're saying that absent a constitutional issue, there is no such thing as federal habeas. Is that what you're saying? I'm saying that he needs to show a colorable constitutional claim in order to go to habeas because he had an opportunity to challenge the underlying order in habeas and chose not to do so. So what you're suggesting is that we treat this as what it is and decide it and quit without either deciding a habeas petition or treating it as habeas or transferring it? Treat it as what it is and decide it. I'm saying that the court shouldn't transfer it to the district court for a habeas proceeding. If he wants to seek a habeas petition, he can do so. If we don't transfer it, what do we do? I think that the court should affirm the reinstatement order because it did comply with the statute and it complied with the regulations. Thank you. Thank you, counsel. I'll give you a minute to respond. Your Honor, in terms of prejudice, petitioner, he can show prejudice because he could have filed an I-212 application had his attorney been allowed to be present. And under Perez-Gonzalez, where there's an adjustment of status application and an I-212 application, they can be adjudicated and the person can be granted permanent residence status. That's what happened in Perez-Gonzalez. Mr. Lunatrio actually now has an I-212 that's been pending since about a week after the reinstatement took place. And that hasn't been decided. So that I-212 is still pending. Where is your client physically? He's physically here in Portland. He's not currently in custody. He was released from custody. Yes, Your Honor. With regards to the Padilla case, Padilla did not raise a claim to the underlying removal order. He didn't claim that it had to be a reentry. He didn't claim that it was not a valid removal order. So Padilla is distinguishable in that regard. It is distinguishable, but didn't this Court say that it really didn't make any difference whether there was a challenge to the underlying removal order or not? It did because there was no prejudice shown. But here there is prejudice. One, because he has relief available to him. But I think what you said was prejudice was the non-filing of an I-212, but you say it's now been filed. Where is the prejudice? Because the reinstatement should not take place until after that is adjudicated. And that's what Perez-Gonzalez says. And if the I-212 is approved, then there is no reinstatement because he's a permanent resident. That's what happened in Perez-Gonzalez. But you say there is a pending application, so it still could be resolved in your client's favor? Well, at this point, the agency's position is the reinstatement has already happened. And so now the I-212 is not effective. So what does it mean that it's pending then? Well, it means they simply haven't decided it. I mean, it's been filed. I told you it's decided, but they haven't decided it. Is that what you're saying? No, I'm saying that they said that their position is that the removal order has been reinstated. And because of the reinstatement, whatever is decided with the I-212, it will not have any effect. So they've decided it? In practical terms, yes, they've decided it. Who told you that? Who's the they? Secretary Ridge, do we have a recital from some form? Is there anything in the record that tells us that the I-212 is now in a limbo or nullity? Well, I think this court's decision in both the Perez-Gonzalez case What have you been told formally by Homeland Security or anybody else about the I-212? With regards to this I-212, that it's pending and they haven't made a decision on it. Well, you know, I hope you don't take this as an insult, but you're incoherent. I don't understand what you're saying. You told us that they told you it's no good because the removal order has been reinstated, but then you tell us they haven't made a decision. Once the removal order Has anybody told you anything about the disposition of the I-212? No, Your Honor. That's all we need to know. Thank you, Counsel. Thank you, Your Honor. The case is order submitted. Todorov v. Ashcroft.
judges: Leavy, Trott, Pollak